# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ORLANDER K. NORTHERN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 CV 05926 |
| | ) | |
| JOHN H. STROGER JR. HOSPITAL OF COOK COUNTY, | ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) ) | |

## ORDER

Plaintiff Orlander K. Northern brings this suit pursuant to 42 U.S.C. § 1983 against his employer, John H. Stroger Jr. Hospital of Cook County ("Hospital"), asserting claims for "disability, race, age, [and] sex discrimination." Am. Compl. at 3, ECF No. 8.[1] The Hospital has moved to dismiss his First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth in the Statement below, the defendant's Motion to Dismiss [17] is granted in part. Mr. Northern is granted leave to file a second amended complaint by October 13, 2017 naming the County of Cook as defendant. The defendant's Answer to the seconded amended complaint will be due October 27, 2017. To the extent Northern seeks court-appointed counsel, he must file a separate motion for attorney representation as well as an application detailing his financial status; any request in his First Amended Complaint for appointed counsel is denied without prejudice. This case is referred to the assigned Magistrate Judge for discovery scheduling and supervision, consideration of any matters regarding recruitment of counsel, and to conduct any settlement conference the parties may wish to conduct.

## STATEMENT

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The Court applies this standard, though Northern's factual allegations are at times disjointed or otherwise difficult to discern. Federal courts "construe pro se complaints liberally, holding them to a less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

---

[1] As the page numbers appearing in the amended complaint are irregular, this Court refers to the page numbers of the PDF version of the pleading.

Northern, who works for the Hospital as a paramedic, launched the current suit on June 7, 2016, and filed his *pro se* form amended complaint on July 18, 2016. In a typewritten page included with that amended complaint, Northern asserts that in June of 2015, his superiors at the Hospital "pulled [him] off duty" from his work in the emergency room so that he could perform a "fitness for duty" evaluation. Am. Compl. at 5. He states that his superiors did not provide a reason for the evaluation, and that he immediately contacted his union representative. *Id.* Northern asserts that he complied with a request that he provide a urine sample because failure to do so could have resulted in his termination, and because he had nothing to hide. *Id.* When Northern went to Human Resources to present his paperwork from "Employee Health" and informed staff there that he was off duty until further notice, the staff members were surprised, as Northern's supervisor had not consulted with Human Resources before sending him for testing. *Id.* Sometime after sending Northern home, Human Resources staff contacted him to say that he was on paid administrative leave. *Id.* When Northern's urine sample results "came back clean," "they" wanted him to report back to work, pending approval from his doctors. *Id.* Northern notes that it was the "County's Employee Health," not his doctors, who had removed him from duty. *Id.*

Northern asked "them"—possibly the Hospital's Human Resources staff, though it is not clear from the amended complaint—why he was removed from duty, but "they" could not provide an explanation, and instead asked Northern to participate in another evaluation. *Id.* To Northern's "dismay and chagrin," this was a mental health evaluation performed by two psychiatrists to "determine if [Northern] was mentally stable to perform [his] job." *Id.* Northern states that he suffers from depression, that this condition is manageable with medication, and that the "County's Employee Health" has for years approved his leave under the Family and Medical Leave Act based on his doctors' medical expertise. *Id.* Northern asserts that "they"— the identity of these actors is again unclear—deemed him to be a threat based on "one day of testing" and access to his medical records, though "they" agreed with the diagnosis of his primary doctors that he is able to perform his job and does not pose a threat to anyone. *Id.* Northern asserts that he has worked for the Hospital for 13 years, that his work performance evaluations have been "stellar" during that entire period, and that "[t]he problem began when [he] started to file grievances against [his] department for HIPPA violations, unfair working conditions, and payroll errors." *Id.* He alleges that the Hospital has used his disability against him. *Id.* at 6.

In a subsequent narrative section of the form complaint, Northern asserts that he carries a "legal size pocket knife" as a tool, and that when he was visiting "Employee Health" for an appointment—the connection, if any, to the fitness for duty evaluation is unclear—the knife fell out of his pocket. *Id.* at 7. He noticed the knife was gone as he was leaving the building, and when he returned, the Cook County police officers were there. *Id.* The officers took him to their police station and then released him, but kept his knife. *Id.* Where the form complaint asks Northern to state how he was injured, he asserts a "HIPA [sic] violation," saying "there were people there" who "had no business" knowing his medical records, but that a doctor—whose last name is illegible—was nonetheless talking to "a man" about Northern's medical record. *Id.* Elsewhere in the amended complaint, Northern says that he has "been called crazy" and a thief by doctors, and says he believes that a woman lost her life because a doctor "didn't think much about" what Northern had said, presumably in regards to that patient. *Id.* at 4. Along with this amended pleading, Northern submitted two Right to Sue letters from the U.S. Equal Employment Opportunity Commission ("EEOC") stating that he has the right to sue under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and under Titles I and V of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, et seq.; 42 U.S.C. § 12203. *Id.* at 8-9.

Where the form amended complaint asks Northern to provide information regarding any lawsuits he has filed in state or federal court, he includes the case numbers for the current suit as well as for a subsequently filed case in which he alleged claims against the Hospital identical to those asserted here.[2] Am. Compl. at 3. In that same section of the pleading, on the line labeled "Basic claim made," Northern asserts "disability, race, age, [and] sex discrimination," as well as "HEPA [sic] violations." *Id.* Northern alleges that he has lost income, even though he is on paid leave, because he has lost the ability to earn overtime pay and paid holidays. *Id.* at 6. He seeks monetary compensation, and wants to return to work. *Id.* at 10. In his Response to the Hospital's Motion to Dismiss, Northern indicates that the initial psychiatric testing the Hospital "decided to send [him] through" occurred in January and February of 2016. Resp. at 3, ECF No. 23. In September 2016, Stroger was informed that he needed to have a series of additional psychiatric tests performed, and that if he did not do so within 30 days, he would be removed from paid administrative leave. Resp. at 4; *see also Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("We have held that facts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint.") (internal quotation marks omitted).

As a general matter, to overcome a Rule 12(b)(6) motion to dismiss, a complaint "must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). A plaintiff is not required to bring "detailed factual allegations," but the Supreme Court has held that "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The Seventh Circuit has held, however, that in the employment discrimination context, *Twombly* and *Iqbal* require very little. In *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008), the Court of Appeals reaffirmed its stance that to survive dismissal, "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." 526 F.3d at 1084. The Seventh Circuit later held in *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013), that this minimal standard survived the Supreme Court's *Iqbal* decision as well. *Id.* at 1028. The *Luevano* court acknowledged there was some "unresolved tension" between *Twombly* and *Iqbal* on one hand,

---

[2] Another district court judge later dismissed the other suit without prejudice based on its identity with this one. *See Northern v. Stroger*, No. 16 C 07200, ECF No. 6 (N.D. Ill. Sept. 29, 2016). In affirming that dismissal, the Seventh Circuit noted: "a district court may dismiss a complaint if it duplicates another federal case, such as when the 'claims, parties, and available relief do not significantly differ between the two actions.'" *Northern v. Stroger*, 676 Fed. App'x 607, 608 (7th Cir. 2017) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 888-89 (7th Cir. 2012)).

and the Supreme Court's earlier decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)—approving the adequacy of a conclusory complaint of employment discrimination—on the other. *Luevano*, 722 F.3d at 1028. But, the Court of Appeals continued, "[n]either *Iqbal* nor *Twombly* overruled *Swierkiewicz*, and it is our duty to apply the Supreme Court's precedents unless and until the Supreme Court itself overrules them." *Id.* And it is this Court's duty to follow the Seventh Circuit's precedents, which allow a plaintiff to plead his employment discrimination and retaliation claims in conclusory fashion. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) (the notion that "a claim might theoretically be too 'conclusory'" is "hard to square with *Swierkiewicz*" and *Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010)).

In the motion now before this Court, the Hospital argues that dismissal is appropriate because the amended complaint "fails to state any clear set of facts that imposes employer liability." Mot. at 3, ECF No. 17. The Hospital stresses that Northern is still employed and has been off work—with pay—for a fitness for duty evaluation, which the Hospital asserts is not an adverse employment action. *Id.* This argument fails under the applicable pleading rules. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Northern states that he is basing his claims on race and sex discrimination, as well as discrimination based on his disability status and age. Northern alleges that he has been placed on paid leave, and as such has been deprived of overtime pay and paid holidays. Placement on paid administrative leave does not always qualify as an adverse employment action. *See Nichols v. S. Ill. Univ.–Edwardsville*, 510 F.3d 772, 786-87 (7th Cir. 2007). But a materially adverse employment action may exist where an employee's "'compensation, fringe benefits, or other financial terms of employment'" are diminished, or where the action reduces his "long-term career prospects 'by preventing him from using the skills in which he is trained and experienced so that the skills are likely to atrophy.'" *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (quoting *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002)). The Seventh Circuit has also recognized that, "[w]hen overtime pay or premium pay is a significant and expected part of an employee's annual earnings, denial of such pay may constitute an adverse employment action." *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016). Given the early phase of this litigation, this Circuit's employment law jurisprudence, and the requirement that *pro se* complaints be "liberally construed," *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001), Northern has adequately alleged that he suffered an adverse employment action as the result.

Northern has also stated a claim for violation of the ADA. That statute provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In addition, Section 12112(d)(4) of the ADA "prohibits covered entities from requiring a medical examination or inquiring whether an 'employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.'" *Coffman v. Indianapolis Fire Dept.*, 578 F.3d 559, 565 (7th Cir. 2009) (quoting 42 U.S.C. § 12112(d)(4)(A)). Northern alleges that he suffers from depression, and that his employer referred him for a mental health evaluation

without good reason. He also asserts that his employer used his "disability against [him]." Compl. at 6. These allegations in his *pro se* pleading are sufficient at this stage of the litigation.

The Hospital raises one additional argument in its motion: that it has no legal existence separate from that of Cook County. Mot. at 1. The Hospital asserts that the correct defendant can only be Cook County, and that this Court must dismiss the Hospital accordingly. Mot. at 1. The Seventh Circuit has noted that "it is not apparent that [John H. Stroger, Jr. Hospital of Cook County] is a separate, suable entity from Cook County." *Eyiowuawi v. John H. Stroger, Jr. Hosp. of Cook Cnty.*, 146 Fed. App'x 57, 57 n.1 (7th Cir. 2005) (citing *Payne v. Cook Cnty. Hosp.*, 719 F. Supp. 730, 733-34 (N.D. Ill. 1989)). In *Payne*, the district court agreed that Cook County Hospital—an earlier moniker of the Hospital named in this case—was not an entity susceptible to suit. 719 F. Supp. at 733-34; *see also Hall v. Cook Cnty.*, No. 14 C 7887, 2015 WL 5950839, at *4 (N.D. Ill. Oct. 13, 2015) ("The Court finds persuasive . . . the district court decisions finding that [Cook County Health and Hospitals System] is not a suable entity."). The Hospital's Motion to Dismiss is therefore granted only to the extent that it challenges the Hospital's status as an entity susceptible to suit. Northern may file a second amended complaint naming the County of Cook as defendant.

Dated: September 27, 2017

John J. Tharp, Jr.
United States District Judge